HOUTS, Appellant,

v.

HOUTS, Appellee.

[Cite as *Houts v. Houts* (1995), 99 Ohio App.3d 701.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–94–10.

Decided Jan. 5, 1995.

*Francisco A. Garabis,* for appellant.

*Thomas Luth,* for appellee.

HADLEY, Judge.

Plaintiff-appellant, Susan K. Houts ("appellant"), appeals from the judgment of the Mercer County Court of Common Pleas, Domestic Relations Division ("trial court"), which ordered a reduction in the child support obligation of defendant-appellee, Keith G. Houts.

Appellant and appellee were married in August 1980, and had four children as a result of the marriage. In October 1991, appellant filed for divorce from appellee and sought custody and support of the parties' minor children. In

December 1992, the parties were granted a divorce. Therein, the trial court ordered that appellant be designated the residential parent and appellee be ordered to pay child support. The child support obligation imposed upon appellee was based upon the trial court's adoption of the referee's calculation of the child support worksheet (as required by R.C. 3113.215), wherein it stated appellee's gross income as child support for 1991 being $45,501, and recommended that appellee be ordered to pay $274.05 per month per child.

On February 18, 1993, appellee moved the trial court to modify his child support obligation as set forth in the December 1992 divorce decree. Appellee alleged therein that he had "experienced a substantial reduction in income, as evidenced by his [1992] tax return * * *." Appellant requested a hearing on his motion, and a hearing was held on June 29, 1993. Thereafter, in October 1993, the referee issued his report, finding appellee to have "an annual imputed income" of $14,845. Finding the recalculated amount to be more than ten percent less than the amount being paid pursuant to the original child support order, the referee stated that a change of circumstances had occurred pursuant to R.C. 3113.215(B)(4). Moreover, the referee stated that the evidence presented had failed to establish that if it followed the requirements of R.C. 3113.215 an unjust result would occur or a result that was not in the best interest of the children would occur. In sum, the referee recommended that appellee's gross income be reduced to $14,845, a change of circumstances had occurred, and appellee's new monthly obligation be reduced to $121.27 per child.

Appellant filed objections to the referee's report, which mirror the assignments of error raised herein on appeal. On January 13, 1994, the trial court overruled the objections, and agreed that appellee's "income" was $14,845. It therefore modified appellee's child support obligation as recommended by the referee. It is from this judgment entry that appellant submits the following five assignments of error.

## Assignment of Error No. I

"The court of common pleas erred and abused its discretion when it found as a fact that the plaintiff's income was $14,845.00."

## Assignment of Error No. III

"The court of common pleas erred in failing to consider the distortion to defendant's income for the year 1992 by his willful and voluntary payment (on or about December 31, 1992) of alleged expenses that were to be incurred during the 1993 growing season and which were not delivered during 1992 but were to be delivered in 1993."

Assignment of Error No. IV

"The court of common pleas erred as a matter of law when it concluded that there had been a change of circumstances that required the court to recalculate child support."

As a preliminary matter, we must address a contention of the parties concerning which amendment to the child support calculation statute, R.C. 3113.215, is applicable to the motion to modify proceedings and judgment entry. The applicable amendment to R.C. 3113.215 is that statute in effect at the time appellee filed his motion to modify child support on February 18, 1993 (effective date of the statute being April 11, 1991, see 143 Ohio Laws, Part I, 53, 183). Therefore, all references hereinafter to R.C. 3113.215 and other relevant portions of the Revised Code refer to those statutes, as amended, in effect as of February 18, 1993.

The general principle emphasized when a court calculates child support pursuant to R.C. 3113.215 is the best interest of the child. *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 141, 601 N.E.2d 496, 498. Moreover, when calculating child support, a court must strictly comply with the mandates of R.C. 3113.215. *Id.* at paragraph two of the syllabus.

Upon calculation of child support by a trial court pursuant to R.C. 3113.215, that court's calculation will not be disturbed on appeal absent an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142; and, *Marker, supra.* "Abuse of discretion" refers to a decision which is unreasonable, arbitrary, or unconscionable. *Blakemore, supra.*

Based upon our review of the facts in the record and the law as enunciated in R.C. 3113.215 and 3109.05, we find that the trial court erred in the manner in which it determined that appellee was entitled to a modification of child support.

As noted above, the calculation of appellee's original child support obligation was based upon appellee's 1991 tax return. The basis for appellee's request for a modification was that his 1992 tax return reflected a significantly lower income for that year. At trial, appellant's counsel elicited from appellee that appellee had prepaid some farming expenses in 1992 for the 1993 calendar year. When appellee was asked why he had prepaid those expenses, appellee responded:

"Q. [By appellant's counsel] And you made those payments basically as a tax-saving feature so that you could get a tax savings for the year 1992?

"A. [By appellee] Well, yes. Not only that but we get a substantial quantity savings and cash savings for purchasing early.

"Q. So in actuality you were distorting your 1992 expenses by including in it a substantial amount of 1993 expected expenses?

"A. Well, that really wasn't our intent. We do that every year, and I think farmers across the nation do that every year on a cash basis accounting. That's permissible by the Internal Revenue Service, and it's just a fact of life.

"Q. You do that every year?

"A. Yes. When needed, we do.

"Q. You didn't do it in 1991, did you?

"A. We didn't need to in 1991. If you'll look, you'll see that our gross receipts were considerably higher in 1992 than they were in 1991.

"Q. So you basically needed a tax savings and so you—

"A. We needed tax management, and that's what we did."

As noted above, the trial court determined appellee's gross income for 1991 to be $45,501 in its initial calculation of child support. Pursuant to appellee's request to modify child support, the trial court used appellee's tax return for 1992 and found his gross income reduced to $14,845.

As previously stated, R.C. 3113.215 is the statute utilized by a court when calculating child support. Gross income is the starting point on the worksheet (R.C. 3113.215[D], line 1a) to determine an obligor's child support obligation. "Gross income" is defined in R.C. 3113.215(A)(2) as "the total of all earned and unearned income from all sources during a calendar year * * * and includes * * * self-generated income * * *." "Self-generated income," as used in the definition of "gross income," is defined in R.C. 3113.215(A)(3) as "gross receipts received by a parent from self-employment, proprietorship of a business * * * and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts."

R.C. 3113.215(B)(1) provides that the calculation of any child support obligation be made in accordance with the schedule provided in division (D) of the statute and the worksheet in division (E) or (F) of the statute.

■ We agree with appellant that the trial court erred in its calculation of appellee's child support obligation. Foremost for this conclusion is that when calculating an obligor's "gross income," R.C. 3113.215 requires only that income and expenses from "a calendar year" be included in that calculation. See R.C. 3113.215(A)(2). Herein, the trial court examined appellee's finances in 1992 to reach its conclusion as to appellee's "gross income" to determine if a modification in appellee's child support obligation was warranted. Because the trial court relied upon appellee's 1992 finances to calculate his child support obligation, it

erred by including in that calculation any expenses for the calendar year 1993. The trial court can include in an obligor's "gross income" calculation only the income and ordinary and necessary expenses for one calendar year. R.C. 3113.215(A)(2). Thus, in the instant matter, the trial court could use only appellee's income and ordinary and necessary expenses for 1992 in determining the amount of appellee's "gross income."

■ Moreover, we find the trial court's reliance upon, for purposes of calculating appellee's "gross income," primarily appellee's 1992 tax return not to be a proper method of calculating "gross income" pursuant to R.C. 3113.215. R.C. 3113.215(A) advances the formula to calculate a party's gross income for purposes of the worksheet. While a tax return is a proper reference point to aid in calculating a parent's gross income, it is not the sole determining factor of what constitutes a parent's "gross income" or "ordinary and necessary expenses."

Thus, before the trial court proceeds to division (B)(4) of R.C. 3113.215, which provides for the procedure to determine if there has been a change of circumstances to modify the child support obligation, the trial court herein must recalculate appellee's child support obligation using only one calendar year to determine appellee's "gross income."

For the above stated reasons, appellant's first, third, and fourth assignments of error are sustained.

### Assignment of Error No. II

"The court of common pleas erred as a matter of law when it failed to consider the provisions of Section[s] 3113.215(A)(4)(a) and (B)(5)(a) [*sic*] in not requiring the appellee (father) to verify his current income by showing receipts and expense vouchers, together will [*sic*] all supporting documentation and schedules for the tax returns."

R.C. 3113.215(B)(5)(a) states:

"(5) When a court computes the amount of child support required to be paid under a child support order, all of the following apply:

"(a) The parents shall verify current and past income and personal earnings with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns."

Appellant argues that the trial court relied solely upon appellee's 1992 tax return, and that appellee failed to provide supporting documentation for the tax return. At the motion to modify hearing, the following colloquy occurred between appellant's counsel and appellee:

"Q.   In that respect when you discussed this with [your accountant], your tax return, what documents did you show him?

"A.   I believe I showed him the same documents that I had given to you.

"Q.   Did you show him canceled checks?

"A.   Not unless he asked for them.

"Q.   Did you show him any receipts?

"A.   There again, not unless he asked for them.

"Q.   Did he ask for canceled checks?

" * * *

"A.   No.

"Q.   Did he ask for any receipts?

"A.   No.

"Q.   So what did you show him?

"A.   The same information that I made available to you—the computer run.

"Q.   You showed him a computer run?

"A.   Uh-huh.

"Q.   Is this the computer run that has been marked as Exhibit No. 3?

"A.   Looks like it is, yes.

"Q.   Okay.  That's what he used to base [your] tax return?

"A.   Yes."

As stated by the testimony of appellee, the only documentation his accountant used in preparing appellee's 1992 tax return was a computer printout from appellee's bank reflecting his deposits and withdrawals.  This was the only documentation provided for in the record for appellee's 1992 tax return and the testimony at the June 29 hearing on the motion to modify indicates that this documentation does not adequately portray appellee's true income.  We conclude that the documentation as set forth in the statute should have been provided at the hearing on the motion to modify for purposes of computing appellee's gross income.  The issue is not what documentation is used to prepare his tax return, but, rather, what documentation is necessary to verify current and past income and personal earnings as required by R.C. 3113.215(B)(5)(a).

Because appellee did not provide the documentation required by 3113.215(B)(5)(a) at the hearing on the motion to modify, this assignment of error is sustained.

Assignment of Error No. V

"The court of common pleas erred by failing to find that appellee was 'voluntarily underemployed,' as defined in Section 3113.215(A)(5)."

R.C. 3113.215(A)(5) states:

"(5) 'Potential income' means both of the following for a parent that the court determines is voluntarily unemployed or voluntarily underemployed:

"(a) The income that the court determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;

"(b) Imputed income from any nonincome-producing assets of a parent, as determined from the current rate of long-term treasury bills or another appropriate rate as determined by the court, if the income is significant."

In regard to the issue of whether a parent is "voluntarily underemployed," the Ohio Supreme Court has stated:

"Whether a parent is 'voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5), and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion." *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus.

█ In several places in the referee's report, the referee states that appellee's "imputed income" is $14,845. In the trial court's ruling on the objections to the referee's report and its order of modification of child support, it states that a review of the transcript finds no evidence of appellee's being voluntarily underemployed. We have reviewed the transcript of the hearing and the record and reach the same conclusion as the trial court on this matter. Therefore, despite the referee's reference to appellee's income being "imputed," there is no evidence of such, and the finding of the trial court that there was no imputed income will not be disturbed.

This assignment of error is overruled.

Assignments of Error Nos. I, III, and IV are sustained. Assignments of Error Nos. II and V are overruled.

The judgment of the Mercer County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

EVANS, J., concurs.

BRYANT, J., concurs separately.

THOMAS F. BRYANT, Judge, separately concurring.

For purposes of calculating child support, the pertinent sections of R.C. 3113.215 should be interpreted to require the determination of personal income derived from the profits of a proprietorship by application of sound accounting principles to relevant, admissible evidence, thus revealing actual profit, not taxable profit determined by the rules for taxation of income. I believe it advisable to sustain all of the first four assignments of error on the basis of that interpretation only and would reverse the trial court's judgment and remand the cause for further proceedings in accord with that rule. I believe the fifth assignment of error is moot. Therefore, I concur in the judgment only insofar as it requires reversal and remand for determination of child support in accordance with the applicable statute.